MARY · WESEMAN *v.* CATHARINE WINGROVE et al.

JOHN G. FLAMMER, Respondent, CHAUNCEY SMITH, Referee, Appellant.

Where, under the judgment in a partition suit, the referee appointed to sell is directed to pay out of the proceeds all taxes and assessments, etc., which were liens upon the premises, he is bound, before distributing the fund, to pay off all such liens of which he has knowledge. His duty in this respect is not modified or affected by a provision in the terms of sale 'to the effect that he will allow all liens, provided the purchaser shall previous to conveyance, produce proof thereof, with vouchers showing payment.

*It seems* that effect will be given to a general usage permitting the referee to await the production by the purchaser of proof of liens, under which such a clause is included in the terms of sale, by excusing the referee from making examination to discover liens ; but, if he is aware of the existence of a lien, the neglect of the purchaser to furnish proof thereof does not excuse a non-compliance with the judgment, and the referee is liable to such purchaser for the amount the latter is compelled to pay to cancel the lien.

The purchaser in such case is not confined to a remedy by action, but may apply, by motion in the particular suit, for the relief to which he is entitled.

Where, upon motion to compel a referee to pay to the purchaser the amount of such a lien, the questions of fact were referred to a referee to take proof and report thereon, and the report of the referee was confirmed by the Special Term, and when it appeared that, at the General Term, both parties stood upon the report, neither questioning the findings of fact, *held*, that it was no objection to the order of the General Term, that the testimony, which made part of the papers upon which the matter was heard at Special Term, was not before it ; that neither the Code (Code of Civil Procedure, § 1353) nor the rule (rule 14) were to be so literally construed as to require the printing and presentation of unnecessary and superfluous papers.

The motion was made over two years after payment of the assessment.

It did not appear that since the payment the position of the referee had been in any respect changed, or that he had been harmed by the delay. *Held*, that the delay was not such *laches* as to defeat the remedy.

(Argued May 2, 1881; decided May 31, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made December 8, 1879, reversing an order of Special Term which denied a motion on the part of John G. Flammer, purchaser at the sale under the judgment in this action, that Chauncey Smith, referee appointed to sell, pay to said purchaser the amount paid by the latter to discharge an assessment on the premises purchased by him; and granted the relief sought.

The action was for partition. The material facts are stated in the opinion.

*I. T. Williams* for appellant. It was error for the General Term to hear and determine the appeal in this action upon papers other than those upon which it was heard in the court below. (Code of Civil Procedure, § 1353.) It was error in the General Term to deny the motion to dismiss the appeal, the printed papers not having been served in time. (Code, § 17; *Scott* v. *The Young America*, 1 Newbury's Rep. 107.) This is a case of exclusively equitable jurisdiction, and the court is not under the control of the statute, as in actions cognizable only in equity. (*Randle* v. *Allison*, 34 N. Y. 180; 79 Ch. R. 90; 7 Paige, 195; 24 Wend. 587; 15 N. Y. 505; 1 Eq. Juris., § 64, *a.*) The question here presented should have been brought before the court by action, and not by motion. (Code of Civil Procedure, § 416; *Akin* v. *Alb. Nor. R. R. Co.*, 14 Barb.     .)

*John L. Lindsay* for respondent. The referee knew of this lien; he refers to it in his report; he had the money in his hands to pay it, and it is no answer to the application of the purchaser that he paid it to some one else. (*Easton* v. *Pickersgill*, 55 N. Y. 316.)

FINCH, J.   The appellant was duly appointed referee in a partition suit, at first to take proof of the title and incumbrances, and afterward to sell the real estate involved, under the order and judgment of the court and make distribution of the proceeds.   By the terms of that order he was required to pay out of the proceeds of the sale "all taxes and assessments, and Croton water rents, and redeem all tax-sales which may be a lien on the premises, or any part thereof, at the time of such sale."   Just such an order came under our observation in *Easton* v. *Pickersgill* (55 N. Y. 316).   We there held it to be mandatory, and that the referee was bound, before distributing the fund, to pay off and discharge all the liens and assessments of which he had knowledge, and was not justified in shutting his eyes to their existence because the purchaser was sluggish or inactive.   The referee in this case sold the premises to John G. Flammer, for $16,100, the latter assenting to the terms of sale, which, among other things, provided that "all taxes and assessments and other incumbrances which at the time of sale are liens or incumbrances upon said premises will be allowed by the referee out of the purchase-money, provided the purchaser shall, previous to the delivery of the deed, produce to the referee proof of such liens and duplicate receipts for the payment thereof."   Just such terms of sale were brought to our notice in the case above cited. We held that they modified in no respect the duty and responsibility of the referee as to liens of which he had knowledge. While due force and effect was allowed to a general usage which permits the referee not himself to be the active agent in the inquiry for existing liens, but to await the production to him by the purchaser of their proof, and therefore held him excused from the duty of making examination for the existence and amount of the liens, yet we also decided that if there were to his knowledge such liens in existence, it would be absurd to say that he could disregard the order under which he acted and pay over the money as if the liens did not exist. Several of them existed, and incumbered the property in the present case.   One for Broadway widening, of about $125 ;

one for Riverside park, of about $19; and one for arrears of Croton water and taxes, which had been paid by the purchaser, were produced by him to the referee, and allowed him out of the purchase-money. But an assessment for sewers of $247.83 was left outstanding and unpaid. The referee knew of its existence and amount, for it was described in his own report, filed before the sale, as an existing lien. He did not himself pay this assessment. It remained in fact unpaid from the time of the sale in June, 1873, until October, 1875, when the purchaser, to save his property from a threatened enforcement of the lien, paid it to the city. So far there is no dispute about the facts. About two years later, and in 1877, the purchaser began these proceedings to compel the referee to refund the amount of the tax with interest. No explanation of his delay is given. The application developed a serious disagreement as to the facts. The referee claimed that the amount of the assessment was deducted from the purchase-money and assumed by the purchaser. The issue of fact thus raised was sent to a referee to take the proofs and determine the truth. Such referee found that the assessment was not deducted from the purchase-money or allowed thereon. His report develops that the sum of $500 was deducted from the purchase-money, but explains the reason and occasion, and shows that it had nothing to do with this assessment. T. J. Byrne was the plaintiff's attorney in the partition suit. The judgment put in evidence shows, that, in addition to his taxable costs, he was awarded a very liberal allowance of $1,000. Flammer, objecting to complete his purchase and making some complaint about the title, was induced to waive his objections, and take the title by the attorney's agreement to deduct, for the purchaser's benefit, the sum of $500 from the costs. This arrangement was carried out. Practically it reduced the purchase-price just that amount. Formally, and as to the referee, the full bid was paid, since Byrne's receipt represented so much money received and paid. But the deduction and the loss was solely that of the attorney, and for the benefit of the purchaser. The former gave his receipt for $500 which he did not require

the purchaser to pay.  This arrangement had nothing to do with the unpaid assessment.  The referee to whom the question of fact was submitted finds that Flammer did not deduct and was not allowed the amount of the assessment in paying the purchase-price.

The facts thus established seem to be decisive, and to leave the appellant without defense, unless there be force in some other suggestions made in his behalf.

It was argued that the referee was misled and deceived by the conduct of the purchaser.  The sole ground of this position is that the purchaser paid and was allowed three of the assessment liens, and threw the referee off his guard by omitting the one now claimed.  The trouble with that view is two-fold. No such defense was even hinted at in the referee's affidavit. On the contrary, what he does say explicitly contradicts any such idea.  He swears in substance that this assessment was not forgotten, was not overlooked, was perfectly remembered, because he says it was deducted from the purchase-money and assumed by the purchaser.  And besides the referee knew of this assessment for he himself had reported its existence and amount, and knew also that he had not paid it, nor had Flammer, since the latter produced no vouchers.  There is not the least foundation for saying that he was misled, unless an officer of the court, intrusted with serious and responsible duties, and expressly directed as to the manner of their performance, is at liberty to willfully shut his eyes, and disregard at one time the knowledge acquired at another.  We may repeat here what was forcibly said in the case before cited :  " If the purchaser was sluggish or obstinate, and did not produce the proof and receipts of payment, it did not justify the referee in shutting his eyes to the existence of these liens, and ignoring them, and so disposing of the purchase-money as to leave the premises under these liens."  The duty of the referee was plain : it was clearly pointed out to him by the order under which alone he had power to act ; he had full knowledge of the assessment and its non-payment by the purchaser.  That would seem to

be decisive of the question.   But objections are made to the order which required the referee to perform his neglected duty.

It is said the papers on which the motion was heard at Special Term were not before the General Term.   What was omitted, and all that was omitted, was the testimony taken on the reference.   But the report of the referee was confirmed, and there was no appeal from so much of the order as confirmed that report.   At General.Term both parties stood upon it.   Neither questioned its findings of fact, nor brought them in issue.   The testimony, therefore, was immaterial and superfluous.   The sole question arose upon the findings themselves taken as the facts.   Substantially both the Code and the rule have been obeyed.   No new or different papers were presented to the General Term.   Something unnecessary to the appeal was omitted.   If we could see in any direction how the omitted testimony was material, we should require its production. Neither the Code nor the rule are to be so literally construed as to compel the printing and presentation of unnecessary and superfluous papers.   What is material and necessary to the proper action of the appellate court is enough.

It is further contended that the finding which declares that the referee did not pay the assessment is inconsistent with the finding that " he paid and fully accounted for all the money received by him."   There is no such inconsistency.   Both facts are true.   He did pay over and account for all the money he received.   The trouble is that he did it to the wrong person. He paid to the parties to the action the whole of the moneys, when a part of it should have gone to the city in discharge of this assessment. ·

It is finally claimed that the terms of sale absolved the referee from payment, if the purchaser did not produce the duplicate receipts ; that the latter is estopped from claiming payment of the referee ; that in any event the remedy is by action and not by motion ; and that the delay of the purchaser was such *laches* as to defeat his remedy.   None of these positions are sound.   The first two are substantially answered by the views already taken of the facts.   The third is answered by

the authority of *Easton* v. *Pickersgill* (*supra*), in which the remedy by motion was sustained. The last objection, of *laches*, has no sufficient foundation upon which to rest. The cases cited by the appellant relate only to the application of the statute of limitations to equitable rights. The doctrine of *laches* has been considered by us in many cases of motions to vacate assessments, and its application and limitations defined. Where delay has worked an injury ; where by reason of it the position of parties has been changed ; where, relying upon it, new acts have been done or obligations incurred,— there is equity and justice in giving it effect as a bar. (*In re Lord*, 78 N. Y. 109.) Nothing of the kind appears here. It is not shown that since the payment by Flammer, the position of the referee has been in any respect changed, or that he has been harmed by the delay.

We are of the opinion, therefore, that the General Term decided correctly, and the order should be affirmed, with costs.

All concur, except FOLGER, Ch. J., absent.

Order affirmed.